6, Data Treasury v. Electronic Data Systems. Mr. Stephenson, we'll hear from you. Welcome. Good morning. Please proceed. May it please the Court, good morning. Why do you care where your case is heard as long as it's heard by a competent district judge appointed by the President, confirmed by the Senate, and confident to hear your case? We don't care where our case is heard, Your Honor. You're exactly right. Why are we here? You've got a proceeding ongoing in the Eastern District of Texas before one of those very competent district judges. Why can't we just proceed from there? Because, Your Honor, there's two reasons. The first is, the case in the Eastern District of Texas is 50-plus defendants. We don't know when, how that case gets to trial. We're one of 50. But it's ahead of where you were, right? It's had a claim construction already, and there's already been significant ongoing proceedings. No, Your Honor. So you can benefit, your client can benefit from some of the work that's already been done. Your Honor, it's actually not ahead of where you are, and let me explain. The Northern District of Texas case was one month from trial. At that point, Markman had been briefed and argued, had not yet been cited. In validity discovery had been completed, expert reports had been completely served, opening expert reports. The plaintiff had filed its disclosure of asserted claims and infringement contention. If the district judge in the Northern District was so prepared to go forward, why the grant of the motion to dismiss and move to the Eastern District? Why didn't the district judge there just say, no, we're going to try this next week? Well, that's what we're advocating he should have been. I don't know why his reasons weren't... Well, that's his call, isn't it? It was his call, and we're contending that's an abuse of discretion, because at the time he dismissed the case, there was no judicial economy to be served. Was he the judge of that? I mean, he's the one who says, I can look at my docket and see if it's going to benefit or not. He is the judge of it. You're asking us to decide for the Northern District of Texas what's best for its docket? What I'm suggesting, Your Honor, is that the case law of this court suggests that the discretion vested in the district court is not unbounded. Certainly not, but something like this docket, judicial economy, that's pretty unusual for us to know what's better than the person who has the task of managing that docket. Well, Your Honor, in other cases, this court has reversed district court dismissals of declaratory judgment cases. Finding an abuse of discretion, we're not asking anything different that happened in those cases. But also, let me address the status of what the Eastern District of Texas case was at the time of the dismissal. There wasn't a markdown that had been done in that case. The markdown you're referring to was in a wholly separate case, the J.P. Morgan case. The same patents? The same patents. Different accused products, obviously, but nonetheless the same patents. But the claim construction is not a function of the accused products, that's a function of the patents. Correct. You benefit by going in somewhere where you know what the patents mean, and now you can just work on the infringement issues. Your Honor, we have a right, I think, to get heard on a markdown, to advocate claim constructions in the new case, given our status that we weren't party to the prior markdown proceeding. And obviously the District Court was going to be before us, that right. But the status of the Eastern District Court case at the time the Northern District dismissed is, it had only been filed about two months earlier, it hadn't been answered yet, EDS was not a party to that case. Given that, if you take a snapshot of what happened when the District Court in the Northern District entered its order of dismissal, we had a Northern District case that was one month before trial and we were ready to go. Wait a minute, you say you're ready to go, you asked for a continuance. You wanted a four month continuance, so what do you mean you're ready to go? This sounds very fuzzy on the facts here. Your Honor, we were, the trial was set in one month. I understand the trial date that you scheduled, but when you say we were ready to go, that's not consistent with the fact that you asked for a four month extension of time. Your Honor, to do discovery on the newly accused product, that was our traditional check processing services. I mean, what ended up happening in the Northern District case is, when the plaintiff originally filed its complaint against EDS, it accused broadly EDS of infringing the patent. And it identified one exemplar of accused product, something called net deposit. As the case went forward, EDS also had some traditional check processing services that weren't under the name of net deposit, which now today, the plaintiff is accusing of infringement. The impact of that, Your Honor, is by June 28th, just before the dismissal, about two months before the dismissal by the Northern District of Texas, the plaintiff accused EDS' customers in this other proceeding of infringing based on traditional check processing services. And at that point, EDS realized that there was an actual attack on its traditional check processing services that it wanted to get adjudicated. The position we were in on that date in June of 2005 was, we weren't a party to the Eastern District of Texas, actually. We had the issues teed up in the Northern District. It made a lot more sense to go forward there and get our adjudication rather than get in with 50 defendants in the Eastern District and wait who knows how many years before we could possibly get to trial. The issue isn't where you reasonably preferred to be. The issue is whether the district judge abused his discretion in sending you, in effect, to Eastern Texas. That's exactly right, and my contention is, that is an abuse of discretion. There's got to be a boundary somewhere. At some point, some case has got to be a sufficiently bad decision. How would we know how far along either case was? Well, the facts are in the record. We cited the record sites in our briefs to the court. The court knows that the Eastern District case was filed in June of 2005. The point is, we know nothing at all about all the other cases facing Judge Kincaid, or all the other cases facing the Eastern District judge. So we don't have the full picture, despite what's, quote, in the record. So how can we evaluate where the balance of judicial economy lies? Well, I think the facts that are in the record allow you to evaluate the balance. The proposition I'm putting to the court, very simply, is when you have a case that's one month before trial, versus a 50 defendant case that's only a couple of months old, I think that's a pretty compelling case for abuse of discretion. Okay. Unless there are further questions, I'll reserve the remaining time. Thank you. May I please have the floor? As a parent, Why did you waste so long to transfer this? We, what prompted the transfer of this, Your Honor, was nothing had been happening in the Dallas cases. We then got an order from Judge Kincaid saying that he was going to contemplate entry of the schedule. And when he contemplated, when he gave us the order contemplating the entry of the schedule, we, within a month, moved to transfer the case to the Eastern District. How does this court know that you weren't just hedging your bet? You're staying in the Northern District, seeing if the Eastern District's going to give you a good claim construction, and then you'll take your pick. Well, Your Honor, all I can tell you, you get a decent claim construction, you'll go to the Eastern District, otherwise you'll stay in the Northern. You know, you're playing one court against another. How are we to determine that that isn't what your strategy is? Your Honor, all I can tell you in that regard is this. Judge Kaplan, the magistrate judge in the first data matter, said very specifically that the interest of justice required a transfer of that case to the Eastern District of Texas. We heeded that advice everything thereafter we filed in the Eastern District of Texas. We never filed anything else in the Northern District of Texas. Now, Greg, you are correct. But left it open, left it there, left it there, left it there, year after year, until you saw things were going your way, now you can go ahead and go through with the transfer. Unless you can tell me that that was, that I'm missing something. Yeah, I understand the court's question. Your Honor, the simple fact is, the cases in the Eastern District of Texas were far advanced as it relates to the case in the Northern District of Texas. Our energy and focus was on prosecuting those Eastern District cases. There had never been, and this is the precise answer to your question, I believe, there had never been an order setting a schedule, setting a trial date, setting a markman date, setting a schedule in the Northern District of Texas until within a month of when we moved to transfer it. That's the reason, Your Honor, the Northern District case was in a standstill. The Eastern District cases were proceeding along. When prompted by action of the court, we moved to transfer it because Judge Kaplan had told us very plainly that the proper venue for these cases was the Eastern District of Texas and we heeded his advice. As is apparent from the brief and from Mr. Stevenson's argument, they do not contest that the court consider that the considerations of judicial economy are proper considerations. Instead, they just simply dispute the weighing, the factual determinations made by the Northern District of Texas Court. All they are now asking this court to do is simply re-weigh the application of those discretionary factors. And as this court is well aware, the Supreme Court in Wilton, and frankly, at the end of a recent opinion, specifically goes back to Wilton saying that the facts bearing on the propriety of discretionary jurisdiction of a declaratory judgment are peculiarly within the grasp of the district court and that they have unique and substantial discretion in this court. Mr. Stevenson mentioned some other cases where this court has, in fact, reversed discretionary dismissals. But in each of those cases, they are fundamentally different than this. They were not circumstances where the appellant said, Your Honor, the considerations were appropriate. We just want you to re-weigh those. We want you to put your place and substitute your judgment for that of the district court. Those cases, Electronics for Imaging, Genentech v. Eli Lilly, and Capo v. Dioptics Medical Products, were each cases where the district court relied on improper legal considerations in determining when or whether to transfer the case. For instance, in Electronics for Imaging, as this court pointed out in the opinion, they relied on an improper definition of the type of uncertainty sought to be remedied by the declaratory judgment. Again, in Genentech, the sole basis for dismissal was the later-filed infringement suit. And in Capo, the court said the district court's consideration of the lack of a counterclaim for infringement was an improper consideration. The district court, in this case, however, did not rely on improper considerations. In fact, it relied on considerations that this court and the Supreme Court have said repeatedly are improper, those being issues of judicial economy. As the court has said, the center of gravity, undisputedly, was in the Western District of Texas. The first lawsuit was filed seven months prior to the filing of the Dallas lawsuits. Moreover, as the court could tell from the joint appendix, the magistrate judge and the district judge in the Eastern District of Texas have, in fact, entered over 150 pages of opinions concerning the claims in the case. Also, Your Honor, as Mr. Stevenson just candidly admitted, the procedural posture of the case up until the point of our dismissal had been concerning the EDS pay for Check 21 product that was no longer an issue as a result of the settlement of its indemnity bill. So, in sum, all EDS wants the court to do is weigh those factors, those decisions, like Your Honor mentioned, about the management of a district court's docket. They just want you, or they're requesting this court, to just disregard the fact that the district court in the Northern District of Texas was managing his docket. He knew these other matters. Why do you think they're so worried about the Eastern District of Texas? I don't know precisely, Your Honor. I would speculate, outside the record, that they're concerned. Why did you choose the Eastern District of Texas? We chose the Eastern District of Texas in the original suits, Your Honor, because of the patent rules and the firmness of trial settings and those sorts of decisions that are appropriate for plaintiffs to consider. Our former lawyer then filed these other suits in the Northern District, as the court is aware, and the district court in the Northern District said this is not the place for these cases. They should be in the Eastern District of Texas. And since Magistrate Judge Kaplan entered that order, we have hewed to that, Your Honor, and we have continued to file our lawsuits in the Eastern District of Texas. At the time the Northern District of Texas court dismissed this case, there were 10 infringement suits pending in the Eastern District of Texas. Therefore, Your Honor, in sum, I would respectfully suggest that the district court in the Northern District of Texas consider proper considerations. He exercised his discretion. He was in a unique position to make those judgment calls. This court has talked about the importance of consistency as it relates to marketing rulings and the like. And all those reasons amply support the district court's decision to dismiss this case, and we would respectfully request the court to affirm it. If the court has no further questions, I will yield the rest of my time. Thank you. Mr. Stephenson. Your Honor, this isn't an issue about the Eastern District of Texas and why we want to be in one or the other. We have a great deal of respect for the Eastern District, and the judges there have an outstanding record in handling patent cases and handling them well. The real reason for this appeal is we were one month from trial in a single defendant case, and then all of a sudden we become at the very beginning of a 50-defendant case. We have no right under the case law to be the only defendant as opposed to one of many. You're right, Your Honor. It might be a preference, but there's nowhere in the law that gives you some entitlement to be the sole defendant. You're right, Your Honor, and we don't have that entitlement. What I'm arguing, though, is that's our motivation. The legal rationale that the court should apply to reverse is that there's an abuse of discretion because there isn't judicial autonomy to be served here. The district court's opinion... What rulings had Judge Kincaid handed down? In terms of this record, I wonder how much he even knew about the merits of the case. He hadn't ruled on summary judgment. He hadn't ruled on the Markman.  to master the facts and the evidence. So as far as I can speculate, he knows very little, if anything, about the merits. So he's at the beginning of the learning curve. If that's true, then it's very understandable that he would say this case ought to be handed off to a judge who's way further up the learning curve than I am as of right now. Your Honor, as far as ruling... You're right, he did rule on Markman. He did rule on summary judgment, but he did have... In fact, I presented a one-day Markman hearing to Judge Kincaid on these facts. We were anxious forward getting a ruling from him, but maybe perhaps more significantly... What had he ruled on? He had ruled on some motions to transfer. He had ruled on some procedural discovery motions in the case, and that's not it. But to underline the court's review, I mean, we have to go back to the order that the judge wrote. And the order he wrote was a one-sentence, I think there will be greater efficiencies, greater judicial economies if this case is either dismissed or transferred to the Eastern District. The important thing, at the time Judge Kincaid wrote those words, EDS was not a party to that 50-plus defendant Eastern District case. It wasn't a party to any of the cases in the Eastern District. So from that standpoint, from a judicial economy, what Judge Kincaid has got to be really betting on is that they're going to turn around and do this the next day, which they in fact did. But you could have filed somewhere else. You could have filed your D.J. action somewhere else after you were dismissed without prejudice to Northern Texas by Judge Kincaid. And, Your Honor, there's no point for us in doing that because our rationale here, again, is not to avoid the Eastern District. We're fine in the Eastern District. Our rationale is... Well, he offered to transfer you, and you said no, no, no, dismiss us so we can come to the Federal Circuit. Again, if we're back in the 50-defendant case at the very beginning of it, having to redo our discovery on invalidity, having to redo all our breaching, having to incur millions of dollars... Well, wait a minute. Why do you have to redo anything if you've done work on some of your judgment motions or remarkment issues? Why can't you just refile those same documents with all the same preparation in the other district? Because we had a... That's a waste. Didn't you have to throw that away and start all over again as if you had just been hired? You can redo a little bit and reuse a little of your work, but you can't use it all. For instance, there were 30-plus depositions taken, and we would have had no right to automatically use those in the Eastern District. We would have had to negotiate some sort of stipulation with the plaintiff that those would be admissible. Odds are, given that you have 50 more parties in the case, those all end up getting retaken anyway. But what about all the parties that already settled? Are there 50 defendants still defending an active litigation? There's 50 defendants still. Nobody has settled. The cases can stay, depending on the examination by the Patent Office and the patents at issue. Unless there are questions. All right. Time has expired, and we take the case under advisory.